IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>ANNMARIE FRENCH, et al.,<br><br>*Defendants* | Case No. 2:19-cv-00563-JDW |

# MEMORANDUM

This insurance coverage dispute turns on the application of two exclusions in an auto insurance policy that Plaintiff Mid-Century Insurance Company, LLC, issued to Annemarie and Timothy French (the "Policy"). For the reasons stated below, the Court concludes that both the named driver exclusion and the regular use exclusion apply and are enforceable under Pennsylvania law. Therefore, the Court will grant summary judgment in favor of Mid-Century and against Defendant Robert Stern.

## I. FACTUAL BACKGROUND

### A. The Policy

Annmarie and Timothy French insured their family car, a 2001 Ford F350, with Mid-Century. The Policy bears policy number 1FTWW33F21EC33540, and has a policy period from May 9, 2017, to May 9, 2019. (ECF No. 33-2 at Ex. D.) It provides, among other things, "We do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **car**, other than **your insured car**, which is owned by, furnished or available for regular use

by **you** or a **family member**." (*Id.* at p. 12 of 73 (emphasis in original) (the "Regular Use Exclusion").)

Gavin French is Annemarie's and Timothy's adult son. When Gavin went to college, Annemarie and Timothy sought to exclude him from their auto coverage. (ECF No. 33-2 at Ex. H, 6:16-17.) As a result, the Policy that Mid-Century issued to them contains a named driver exclusion endorsement that lists their son Gavin French as the "Person(s) Restricted" (the "Named Driver Exclusion"). (ECF No. 33-2 at Ex. D, p. 34 of 73.) The exclusion provides that "all coverage for **bodily injury**, loss or **damages** afforded by this policy and all liability or obligation of any kind shall not, at any time or after the effective date shown, apply to the operation or use of any vehicle by the person(s) named above." (*Id.* (emphasis in original).) After Annemarie and Timothy excluded Gavin from coverage, their insurance premiums went down. (ECF No. 33-2 at Ex. H, 8:17-19.)

Gavin French owned his own car, a 2014 Toyota Corolla. (ECF No. 33-2 at Ex. E, 17:8-12.) He co-owned this car with his fiancée, Carlie Lambert. (*Id.*) Carlie also owned another car, a 2008 Honda CR-V. (*Id.* at 16:4-11.) Both cars were covered by a GEICO insurance policy on which Carlie was listed as the named insured, and Gavin was listed as an additional driver. (ECF No. 33-2 at Ex. F.) Gavin was included on the GEICO policy because he was driving both cars at the time. (ECF No. 35 at Ex. A, 17:20 – 18:8.) Indeed, he had a key to Carlie's Honda. (ECF No. 33-2 at Ex. E, 27:15-17.)

**B.     The Accident**

On August 20, 2017, Gavin was driving Carlie's Honda and struck Robert Stern, who suffered serious injuries and filed a personal injury lawsuit against Gavin in the Court of Common Pleas for Bucks County, Pennsylvania. *See Stern v. French*, Case No. 2017-07378 (Bucks Cty.)

(the "Bucks County Action"). GEICO has defended Gavin in that matter. (ECF No. 35 at Ex. A, 17:20 – 18:5.) At the time of the accident, Gavin and his fiancée, Carlie, lived at Annemarie's and Timothy's house in Perkasie, Pennsylvania. (ECF No. 33-2 at Ex. H, 5:2-6.) Annemarie and Timothy, however, were residing at another residence in Maine and had their Ford F350 there with them. (*Id.* at 7:4-11.)

    C.    **Procedural History**

On February 7, 2019, Mid-Century filed a Complaint against the Frenches, Gavin, and Stern, seeking a declaratory judgment that the Policy does not provide liability coverage for any claim made by Stern against French in the Bucks County Action. (ECF No. 1.) On April 5, 2019, Stern filed an answer and counterclaim for a declaratory judgment that he is entitled to coverage under the Policy. (ECF No. 7.) The Frenches have not answered, appeared, or otherwise defended themselves in this action. Thus, on June 24, 2019, the Clerk of Court entered a default against each of these three defendants.

On August 16, 2019, Stern filed a Motion for Summary Judgment. (ECF No. 33.) The same day, Mid-Century filed a Motion for Judgment on the Pleadings. (ECF No. 32.) Each Party has responded to the motions, and Stern filed evidence in response to Mid-Century's motion. Therefore, in order to consider the entire record before it, the Court will exercise its discretion to treat Mid-Century's motion as a summary judgment motion. *See Wolfington v. Reconstructive Orthopedic Assocs. II PC*, No. 17-cv-3500, --- F.3d ----2019 WL 3925948, at *3 (3d Cir. Aug. 20, 2019).

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Dodson v. Coatesville Hosp. Corp.*, No. 18-3065, --- Fed. App'x ----, 2019 WL 2338461, at *2 n.6 (3d Cir. June 3, 2019) (quotation omitted). "When confronted with cross-motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

## III. ANALYSIS

The Parties' dispute centers on whether the Named Driver Exclusion or the Regular Use Exclusion applies here. If either exclusion applies, then there is no coverage. Because this case is based upon diversity of citizenship jurisdiction, Pennsylvania contract law governs. *See Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 158 (3d Cir. 2017) (citation omitted). In Pennsylvania, "[t]he interpretation of an insurance policy is a question of law for the court."

4

*Byoung Suk An v. Victoria Fire & Cas. Co.*, 113 A.3d 1283, 1288 (Pa. Super. Ct. 2015). When interpreting an insurance policy, like other contracts, "the goal is to ascertain the intent of the parties …. The polestar of our inquiry is the language of the insurance policy." *Id.* (quotation omitted). "[W]ords of common usage are to be construed in their natural, plain, and ordinary sense[,]" and the court must give effect to the policy's clear and unambiguous language. *Id.* "A court must not resort to a strained contrivance or distort the meaning of the language in order to find an ambiguity[.]" *Id.* Instead, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* In cases such as this, "[w]here an insurer seeks to disclaim coverage on the basis of a policy exclusion … the insurer bears the burden of proving the applicability of the exclusion …." *Gen. Refractories*, 855 F.3d at 158 (citation omitted).

A. **The Named Driver Exclusion**

Neither party disputes that, by its terms, the Named Driver Exclusion applies and excludes coverage for Gavin. Nor could they. Stern, however, argues that Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") renders the Named Driver Exclusion unenforceable. The MVFRL provides, in relevant part:

> An insurer or the first named insured may exclude any person or his personal representative from benefits under a policy enumerated in section 1711 or 1712 when …
>
> > The first named insured has requested that the person be excluded from coverage while operating a motor vehicle. **This paragraph shall only apply if the excluded person is insured on another policy of motor vehicle liability insurance**.

75 Pa. C.S.A. § 1718(c)(2) (emphasis added). The undisputed evidence establishes that Annemarie and Timothy—the first named insureds on the Policy—requested that Gavin be excluded from

coverage while operating a motor vehicle. Thus, this statutory provision applies as long as Gavin was "insured on another policy of motor vehicle liability insurance." *Id.*

Both parties identify the relevant statutory language that is the key to this analysis, and both parties argue that the language supports their position. However, neither party has taken the time to analyze the statutory language or to provide the Court with any analysis as to its proper interpretation. Instead, each party makes an unhelpful logical leap to conclude that the statutory language supports its position. Statutory interpretation demands more, however.

When interpreting a statute, the Court's "primary purpose … is to discern legislative intent." *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006). In most cases, "[t]he plain meaning of legislation should be conclusive[.]" *Id.* (quotation omitted). "[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary ... meaning ... at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (quoting *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)); *see also Obasi Inv. LTD v. Tibet Pharm., Inc.*, 931 F.3d 179, 184 (3d Cir. 2019) ("The Securities Act does not define 'director,' so we turn to dictionary definitions from the time Congress enacted the statute."). Pennsylvania's General Assembly adopted the MVFRL in 1984. At the time, the word "on" was defined as "supported by or attached to or covering or enclosing." *The Concise Oxford Dictionary of Current English* 710 (7th ed. 1982); *see also Webster's Third New International Dictionary of the English Language Unabridged* 1574-75 (1976) (definitions of "on" include "a function word to indicate presence within").

These definitions demonstrate that, at the time the General Assembly adopted the MVFRL, the word "on" was broadly inclusive. In the context of the MVFRL, and in light of that definition, the Court concludes that the phrase "insured on another policy of motor vehicle liability insurance"

6

means "within the coverage offered by another policy of motor vehicle liability insurance." Any narrower interpretation would ignore the General Assembly's use of the preposition "on" in the statute. Here, Gavin French was a person who was included within the scope of the GEICO policy. He was listed on that policy as an additional driver, which indicates that he falls within the ambit of its coverage. In addition, GEICO has defended Gavin in the underlying lawsuit, which further indicates that Gavin within the scope of that policy's coverage.

Stern argues that Section 1782(c)(2) only permits a named driver exclusion if the excluded individual is a named insured on a different policy of insurance, rather than just someone who falls within the other policy's coverage. (ECF No. 33 at 8; No. 34 at 7-8.) His proposed interpretation runs counter to the General Assembly's intent in adopting the statute, however. In using the phrase "insured on another policy of motor vehicle liability insurance," Pennsylvania's General Assembly indicated its intent to permit a named driver exclusion to apply as long as the named individual was within the scope of the other policy's coverage, as explained above. In his brief, Stern himself identifies various categories of individuals who are afforded liability coverage under auto insurance policies, including the named insured, resident relatives, and permissive users. (ECF No. 34 at 5, 6.) Indeed, "[a]lthough a family car may be registered in the name of one individual, numerous additional drivers may be licensed and insured to operate the same vehicle." *Commonwealth v. Jefferson*, No. 1119 WDA 2018, 2019 WL 3526387, at *4 (Pa. Super. Ct. Aug. 2, 2019) (quoting *Commonwealth v. Andersen*, 753 A.2d 1289, 1294 (Pa. Super. Ct. 2000)). The Pennsylvania General Assembly would have been aware that "[a]utomobile insurance coverage has traditionally been extended" to individuals other than the named insured on the policy (ECF No. 34 at 6), and thus, would not have limited the named driver exclusion to named insureds.

7

Stern's proffered reading of the statute is also at odds with the presumption of consistent usage. The General Assembly defines an "insured" in 75 Pa. C.S.A. § 1702 and uses that term throughout the MVFRL. *See, e.g.*, 75 Pa. C.S.A. §§ 1712, 1723, 1724, 1793. In Section 1718(c)(2), however, rather than specify that the named driver exclusion only applies to **an insured** on another policy, the statute refers to a person who **is insured** on the other policy. Because the General Assembly chose to use the term "an insured" elsewhere in the statute and declined to do so here, the Court presumes that it intended to convey a different meaning by referring to a person who "is insured." *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 140 n.9 (3d Cir. 2017) (applying presumption of consistent usage in similar fashion). Stern's request that the Court interpret the statute to refer to an insured when it is clear that the General Assembly knew how to specify "an insured" when it wanted to, "runs afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004). Thus, the Court declines to read this limitation into the statute.

Stern also offers a number of public policy reasons why the Named Driver Exclusion should not apply here. (ECF No. 34 at 5-9.) The General Assembly resolved the public policy issues when it adopted the MVFRL. It is not this Court's place to revisit those legislative decisions; it is the Court's place only to enforce the statute. If Stern has a public policy argument to make about the MVFRL or the wider impact of named driver exclusions, the forum in which to do so is the General Assembly, not this Court.

**B.     The Regular Use Exclusion**

Gavin did not own the Honda CR-V that he was driving when the accident occurred. (ECF No. 33-2 at Ex. E, 16:4 – 17:5.) Thus, the question is whether the Honda was "furnished or

available" for Gavin's regular use. If so, the Regular Use Exclusion applies, and the Policy does not offer coverage.

There can be no dispute that the Honda CR-V was available for Gavin's regular use. Gavin testified that he used the Honda CR-V on a regular basis and had permission to do so. Indeed, during his examination under oath on June 19, 2018, Gavin testified that he was included on the GEICO policy because he was driving both the Toyota Corolla and his fiancée's Honda CR-V during the relevant period. (ECF No. 35 at Ex. A, 17:20 – 18:8.) He also had his own set of keys to the Honda as of August 20, 2017—the date of the accident. (ECF No. 33-2 at Ex. E, 27:15-17.)

Gavin testified that his fiancée was the named insured on the policy and that he was listed as an additional driver. (*Id.* at 20:17 – 21:2.) According to Gavin, this meant that his fiancée "has full control over the entire policy, and I do not have that same access." (*Id.* at 21:6-8.) Though Stern appears to assign some import to this testimony, the fact that Gavin was listed as an additional driver rather than a named insured on the GEICO policy has no bearing on whether the Honda CR-V was furnished or available for his regular use. If anything, the fact that he was listed as an additional driver on the policy suggests that the car was available for his regular use. While Stern argues that regular use exclusions tend to arise in cases involving an employer's fleet vehicles, Stern fails to offer a convincing reason why this factual difference is meaningful. Thus, the Court finds that the Regular Use Exclusion applies and bars coverage.

IV. **CONCLUSION**

Mid-Century has demonstrated that the Policy's Named Driver Exclusion endorsement and Regular Use Exclusion apply here. As a result, the Policy offers no coverage. Thus, the Court will enter judgment in favor of Mid-Century and against Defendants Annmarie French, Timothy French, Gavin French, and Robert Stern on Mid-Century's claim for a declaratory judgment. In

9

addition, because coverage is barred, the Court will enter judgment in favor of Mid-Century and against Robert Stern on Stern's counterclaim against Mid-Century.  An appropriate Order follows.

**BY THE COURT:**

Dated:  September 12, 2019                         */s/ Joshua D. Wolson*
                                                                    JOSHUA D. WOLSON, J.